In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY PERTAINING TO CONFIDENTIALITY OF ADOPTION RECORDS and PETITION FOR RE-HEARING DENIED IN PART ON APRIL 3, 1992.

Ellen T. Wilson, Petitioner,

and

James Joseph Page, Deana Christine Page, and Paul Frances Page, Respondents,

and

Natalie Meyer, Gale Norton, and Douglas G. Brown, Title Setting Board.

No. 92SA165.

Supreme Court of Colorado, En Banc.

June 22, 1992.

Rehearing Denied July 13, 1992.

Ellen T. Wilson, pro se.

Jim Page, pro se.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., Denver, for Title Setting Bd.

Chief Justice ROVIRA delivered the Opinion of the Court.

This review proceeding was initiated by the petitioner, Ellen T. Wilson, to challenge the title, ballot title and submission clause, and summary prepared by the Title Setting Board (Board)[1] on an initiative for a statutory amendment pertaining to confidentiality of adoption records.[2] The petitioner asserts that the title, ballot title and submission clause, and summary are vague, misleading, and fail to express the true meaning and intent of the proposed initiative. We disagree and accordingly affirm the Board.

## I

In March 1992, James Joseph Page, Deana Christine Page, and Paul Frances Page proposed an initiative to amend section 19-1-122, 8B C.R.S. (1991 Supp.), of the Colorado Children's Code.[3] The initiative would allow adoptive records to be unsealed 180 days after the adoptee's twenty-first birthday. The initiative also allows adoptees, adoptive parents, and birth parents to request that their portion of the record remain sealed. Currently under section 19-1-122, "all records and proceedings in relinquishment or adoption shall be confidential and open to inspection only upon order of the court for good cause shown." The initiative would go into effect on January 1, 1993, and would apply to all adoptions finalized in Colorado.

The Board conducted a hearing as required by section 1-40-101(2) and designated and fixed the following title for the proposed initiative:

AN ACT TO PROVIDE THAT ALL OR A PORTION OF THE RECORDS IN ADOPTION AND RELINQUISHMENT ACTIONS WILL BE AUTOMATICALLY OPEN TO THE ADOPTEE, THE ADOPTIVE PARENTS, AND THE BIRTH PARENTS ONE HUNDRED AND EIGHTY DAYS FOLLOWING THE ADOPTEE'S TWENTY-FIRST BIRTHDAY; TO PROVIDE THAT, UPON WRITTEN REQUEST RECEIVED WITHIN ONE HUNDRED EIGHTY-SEVEN DAYS FOLLOWING THE ADOPTEE'S TWENTY-FIRST BIRTHDAY FROM AN ADOPTEE, ADOPTIVE PARENT, OR BIRTH PARENT, THOSE PORTIONS OF ADOPTION OR RELINQUISHMENT RECORDS PERTAINING TO THE REQUESTING PARTY WILL REMAIN SEALED; AND TO PROVIDE THAT AN ADOPTEE, ADOPTIVE PARENT, OR BIRTH PARENT MAY REOPEN OR RESEAL THE RECORD OF ADOPTION OR RELINQUISHMENT AT ANY TIME.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN ACT TO PROVIDE THAT ALL OR A PORTION OF THE RECORDS IN ADOPTION AND RELINQUISHMENT ACTIONS WILL BE AUTOMATICALLY OPEN TO THE ADOPTEE, THE ADOPTIVE PARENTS, AND THE BIRTH PARENTS ONE HUNDRED AND EIGHTY DAYS FOLLOWING THE ADOPTEE'S TWENTY-FIRST BIRTHDAY; TO PROVIDE THAT, UPON WRITTEN REQUEST

1. The Board consists of the secretary of state, the attorney general, and the director of the office of legislative legal services or the director's designee. § 1-40-101(2), 1B C.R.S. (1991 Supp.).

2. The proceeding is brought pursuant to section 1-40-102(3)(a), 1B C.R.S. (1991 Supp.), which provides:

Any registered elector ... who is not satisfied with the titles, summary, and submission clause thus provided and claims them to be unfair or that they do not clearly express the true meaning and intent of the proposed law or constitutional amendment ... may file a motion with the secretary of state for a re-

hearing.... If overruled, a certified copy of said petition with the titles, summary, and submission clause of such proposed law or constitutional amendment, together with a certified copy of such motion for rehearing and of the ruling thereon, shall be furnished upon request by the secretary of state to the elector filing such motion ... if filed with the clerk of the Colorado supreme court within five days thereafter shall be docketed as a cause there pending....

3. The proposed initiative is an amendment to the Colorado Children's Code, not an amendment to the Constitution, as the petitioner states.

RECEIVED WITHIN ONE HUNDRED EIGHTY–SEVEN DAYS FOLLOWING THE ADOPTEE'S TWENTY–FIRST BIRTHDAY FROM AN ADOPTEE, ADOPTIVE PARENT, OR BIRTH PARENT, THOSE PORTIONS OF ADOPTION OR RELINQUISHMENT RECORDS PERTAINING TO THE REQUESTING PARTY WILL REMAIN SEALED; AND TO PROVIDE THAT AN ADOPTEE, ADOPTIVE PARENT, OR BIRTH PARENT MAY REOPEN OR RESEAL THE RECORD OF ADOPTION OR RELINQUISHMENT AT ANY TIME?

Lastly, the summary as prepared by the Board states:

This measure amends the current law on the confidentiality of adoption and relinquishment records by eliminating the requirement that the records remain confidential and are open to inspection only upon order of the court. This measure provides that the records in adoption and relinquishment proceedings will be automatically open to an adoptee, adoptive parents, or birth parents one hundred and eighty days following the adoptee's twenty-first birthday, unless an adoptee, adoptive parent, or birth parent makes a written request to the court that the portion of the records pertaining to that party remain sealed. The measure further provides that no one party may completely seal the court record from the other parties without the written consent of the other parties.

This measure has no effect on the current law regarding access to adoption records through confidential intermediaries found in part 3 of article 5 of title 19, Colorado Revised Statutes.

This measure establishes a seven day "grace period" for making a request for confidentiality after the adoptee has reached the age of twenty-one years, and provides that the records are to remain sealed during the "grace period". The measure provides that the record will be automatically sealed, or any portion of the record pertaining to the requesting party will be "blacked out" upon request of a party. The measure further provides that the court has no discretion in determining whether a record is sealed, and that the records are automatically sealed only upon written consent of one or more of the parties to the adoption or relinquishment. It provides that the court is to notify the remaining parties if a request for confidentiality is made by any one of the parties.

The measure is to go into effect on January 1, 1993, and is to apply to all adoptions finalized in the state. The measure requires the court to send written notice that the records will be open unless a request is made to seal the records to adoptees, adoptive parents and birth parents. This notice is to be sent by January 31, 1993, to all parties of adoption or relinquishment proceedings which have been finalized prior to the effective date of the measure.

In order to accomplish the notification by the court, court files would need to be researched. The research and notification would have to be accomplished between November of 1992 and January of 1993. It is expected that the measure would require state expenditures of approximately $1.9 million in fiscal year of 1992–1993, and approximately $250,000 per year thereafter. There would be no significant fiscal impact on local governments.

The petitioner, contesting the validity of the title, ballot title and submission clause, and summary fixed by the Board, requested a rehearing under section 1–40–102(3)(a), 1B C.R.S. (1991 Supp.). The Board heard the petition for rehearing on April 3, 1992, and denied the motion. Pursuant to section 1–40–102(3)(a), review is sought in this court.

## II

The Colorado Constitution grants the people the authority to propose laws and constitutional amendments. *Colo. Const.* art. V, § 1. The proponents of all initiative petitions must submit original drafts of their petitions for proposed laws to the directors of the legislative council

and the office of legislative legal services for review and comment. § 1–40–101(1), 8B C.R.S. (1991 Supp.). The proponents may then choose to amend their original drafts based on the comments of the directors of the legislative council and the office of legislative legal services. The original or amended drafts are then submitted to the Board which designates and fixes "a proper fair title for each such proposed law ... together with a submission clause ... and a clear, concise summary of the proposed law." § 1–40–101(2), 8B C.R.S. (1991 Supp.). The Board's role in setting a title is to "correctly and fairly express the true intent and meaning" of the proposed law. Additionally, the Board should set a title which will not mislead voters as to the effect of a "yes" or "no" vote. § 1–40–101(2), 1B C.R.S. (1991 Supp.). Our review of the Board's actions is guided by the standards recently set forth in *In the Matter of the Title, Ballot Title and Submission Clause Approved September 4, 1991, with Regard to the Proposed Initiated Constitutional Amendment Concerning Limited Gaming in Manitou Springs, Fairplay and in Airports*, 826 P.2d 1241 (Colo.1992) (hereinafter *In re Gaming in Manitou Springs* ). "[S]o long as the title, the ballot title and submission clause, and the summary accurately reflect the central features of the initiated measure in a clear and concise manner, we will not interfere with the Board's choice of language." *Id.* at 1245.

■■■ The petitioner argues that the title, ballot title and submission clause, and summary, as fixed by the Board, are vague and misleading and do not fully inform the electorate of the scope of the proposed initiative. The petitioner specifically objects to the portion of the summary which states:

> The measure is to go into effect on January 1, 1993, and is to apply to all adoptions finalized in the state. The measure requires the court to send written notice that the records will be open unless a request is made to seal the records to adoptees, adoptive parents and birth parents. This notice is to be sent by January 31, 1993, to all parties of adoption or relinquishment proceedings which have been finalized prior to the effective date of the measure.

The measure thus arguably allows access to adoption records for proceedings that antedate the effective date of the statutory amendment. The petitioner argues against making the amendment retroactive, contending that retroactive application would violate her constitutional right of privacy. She therefore contends that the title, ballot title and submission clause, and summary should contain language that adoptions finalized prior to January 1, 1993, are not included in the amendment and remain under the protection of the court pursuant to section 19–1–122, 8B C.R.S. (1991 Supp.), prior to any amended language. We can only consider whether the title, ballot title and submission clause, and summary reflect the intent of the initiative, not whether they reflect all possible problems that may arise in the future in applying the proposed language. *In the Matter of the Title, Ballot Title and Submission Clause, and Summary Pertaining to the Casino Gaming Initiative Adopted on April 21, 1982,* 649 P.2d 303, 310 (Colo. 1982). Also, the intent of the initiative must be given effect when the Board designates the title, ballot title and submission clause, and summary. *In the Matter of the Title, Ballot Title and Submission Clause, and Summary of Proposed Constitutional Amendment Under the Designation "Pregnancy,"* 757 P.2d 132, 135 (Colo.1988). Because there is no indication that the proponents desired any limitation on retroactive application, adding such language would not serve the initiative's intent.

While the title, ballot title and submission clause, and summary may not reflect the petitioner's preference of what the amendment should include, we conclude that the Board set out in the title, ballot title and submission clause, and summary a clear statement of the proponent's initiative, reflecting its intent and fairly advising the voters of the import of the proposed law.

## III

The petitioner also argues that the proposed amendment is constitutionally infirm, violating one's fundamental right of privacy. "In reviewing the Board's action, we must not in any way concern ourselves with the merit or lack of merit of the proposed amendment, since that issue rests with the electorate." *In re Gaming in Manitou Springs*, 826 P.2d at 1245. We may not go beyond ascertaining the intent of the initiative so as to interpret the meaning of the proposed language. *In the Matter of the Title, Ballot Title and Submission Clause Adopted April 4, 1990, Pertaining to the Proposed Initiative on Parental Notification of Abortions for Minors*, 794 P.2d 238, 241 (Colo.1990). A judicial interpretation of the constitutionality of the initiative must await an adjudication in a specific factual context. *See In the Matter of the Title, Ballot Title and Submission Clause, and Summary Pertaining to the Casino Gaming Initiative Adopted on April 21, 1982*, 649 P.2d 303, 310 (Colo.1982). Consequently, we do not address the constitutionality of the amendment. Since we are satisfied that the Board-affirmed descriptions reflect the true meaning and intent of the proposed amendment, we affirm the Board's adoption of the title, ballot title and submission clause, and summary.